UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ANTON EWING,

Plaintiff,

v.

INTEGRITY CAPITAL SOLUTIONS, INC., et al.,

Defendants.

Case No.: 16-cv-1469 JLS MDD

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

(ECF No. 3)

Presently before the Court are Defendants Integrity Capital Solutions, Inc.'s ("ICS") and Michele Sharpe's (collectively, "Defendants") Motion to Dismiss Plaintiff's RICO Cause of Action ("MTD"), (ECF No. 6), Plaintiff's Response to Defendants' Motion to Dismiss the RICO Cause of Action ("Opp'n"), (ECF No. 14), and Defendants' Reply in Support of the Motion to Dismiss, (ECF No. 15). Having considered the Parties' arguments and the law, the Court **GRANTS** Defendants' Motion to Dismiss.

**BACKGROUND**

On April 11, 2016, Plaintiff filed the instant case in California Superior Court (*Anton Ewing v. Integrity Capital Solutions, Inc., et al.*, 37-2016-00011562-CU-BT-CTL), which Defendants subsequently removed to Federal Court. (Defs. Integrity Capital Sols., Inc. and Michelle [sic] Sharpe's Notice of Removal ("Removal Notice") ¶ 1, ECF No. 1.) Plaintiff's Complaint alleges various causes of actions, including "violations of [the] Racketeering

Influence and Corrupt Organizations Act" ("RICO"), 47 U.S.C. §§ 227 *et seq*. (*See generally* Removal Notice Ex. A ("Complaint"); *see also id.* at ¶ 2.) Specifically, Plaintiff alleges that Defendant "ICS was and continues to be the alter ego of Defendant Scholl and Sharpe" and that "[o]n March 21, 2016, Defendant ICS, or one of its employees, agents or contractors at its direction and control, called Plaintiff . . . on Plainitff's personal cellular telephone . . . for which E[wing] has expressly informed the public to not make solicitation calls via national do-not-call list registration as well as other public warnings." (Compl. ¶¶ 3–4.) This specific instance of calling is in turn supported by Plaintiff's allegations that "[t]o the best of [his] . . . recollection, he spoke to ICS['s] . . . personnel several times[,]" (*id.* ¶ 15), and more general allegations that ICS "continue[s] to manage call centers and recordings on behalf of the racketeering enterprise business" and that "ICS is technologically sophisticated and . . . employs this high level of knowledge and know-how to run its criminal syndicate[,]" (*id.* ¶ 5). To this end, Plaintiff alleges that ICS "continues to monitor and record telephone calls to California residents, including Plaintiff[,]" which comprise "thousands of telephone calls" made to California citizens "[d]uring the relevant period herein . . . ." (*Id.* ¶¶ 6–7.)

Plaintiff's Complaint also contains many instances of allegations based on "information and belief;" e.g., allegations of ICS operating as an "alter ego," that the actions of ICS and "its agents and employees . . . constitute a racketeering enterprise[,]" and that ICS "is in the business of illegally selling lists of names of persons on the Do Not Call list so that those persons . . . receive calls from spammers and telemarketers." (*E.g.*, *Id.* ¶¶ 12, 14.) In general, Plaintiff alleges that "[t]he racketeering activity consisted of the making of threats, extortion, wire fraud, mail fraud, and violations of California criminal laws, including illegal recording of Plaintiff's calls." (*Id.* ¶ 14.) Additionally, Defendants allegedly "initiate up to two thousand calls a day" and had a policy and practice of "call[ing] . . . consumer's home, business, and cellular telephones up to five times a day." (*Id.* ¶ 21.)

/ / /

Finally, Plaintiff's Complaint specifically alleges that all of the Defendants "have engaged in the predicate acts of wire fraud and money laundering[,]" as well as "made express and intentional threats directly at Plaintiff that were within the course and scope of the racketeering enterprise's operations." (*Id.* ¶ 46.) These allegations, combined with Defendants allegedly committing "two or more acts . . . [of] illegally record[ing] Plaintiff's telephonic conversations[,] . . . laundering over $10,000 of the proceeds of the wire fraud through financial institutions[,]" and corresponding "economic downturn" to Plaintiff's business, form the crux of Plaintiff's RICO cause of action.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to

say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts " 'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.*

The Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

**ANALYSIS**

Defendants move to dismiss Plaintiff's RICO cause of action for (1) failure to allege the claim with sufficient particularity under Federal Rule of Civil Procedure 9(b), (MTD 6–7); (2) failure to allege damages sufficient to confer standing to bring a RICO claim, (*id.* at 7–8); and (3) failure to allege facts sufficient to support any of the necessary RICO elements, (*id.* at 8–13). Plaintiff opposes dismissal[1] by generally pointing to allegations in the Complaint he considers to be specific, and attempting to inject several new facts not contained in his Complaint. Because Plaintiff's counterarguments implicate general misconceptions about the standard of pleading sufficient to survive a motion to dismiss, the Court first addresses this threshold issue.

---

[1] Defendants point out that "Plaintiff's opposition [wa]s late by four days" and argue that the Court "should treat Plaintiff's failure to respond as a tac[it] admission as to the merits of Defendants' Motion, pursuant to [Civil] Local Rule 7.1.f.3.c." (Reply 1.) However, the Court declines to invoke Civil Local Rule 7.1.f.3.c, and here considers Plaintiff's Opposition in order to illustrate the relevant standard on a motion to dismiss. Nonetheless, Plaintiff is warned that future untimely filings "may constitute . . . consent to the granting of a motion or other request for ruling by the [C]ourt." Civ. L.R. 7.1.f.3.c.

A common thread which runs through both Plaintiff's Complaint and his Opposition is a general misunderstanding as to *Twombly*'s and *Iqbal*'s plausibility requirement. For example, Plaintiff's Opposition characterizes as "specific and particularized" the Complaint's allegation that "[d]uring the period relevant herein and continuing presently, Defendant ICS was and continues to be the alter ego of Defendant Scholl and Sharpe." (Opp'n 4.) But this is precisely the type of pleading *Twombly* and *Iqbal* establish as insufficient to validly state a cause of action. Alter ego is merely a theory of liability, based on a showing:

> [f]irst, that the corporation is not only influenced and governed by [the defendant], but that there is such a unity of interest and ownership that the individuality, or separateness, of the said [defendant] and corporation has ceased; second, that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice.

*Firstmark Capital Corp. v. Hempel Fin. Corp.*, 859 F.2d 92, 94 (9th Cir. 1988) (emphasis removed) (citing *Wood v. Elling Corp.*, 572 P.2d 755, 761–62 n.9 (1977)). And merely stating that two entities are alter egos, while specific as to the particular entities against whom the claim is made, lacks any specificity as to <u>why</u> those entities, should, in fact, be classified as alter egos. Specific facts are therefore required to <u>show</u> that the entities satisfy the legal definition of—rather than are merely being labeled as—alter egos.

Similarly flawed is Plaintiff's reliance on the allegation that "[d]uring the relevant period herein, thousands of telephone calls with individuals in California were recorded by the ICS . . . telephone systems at the direction of each of the other Defendants" for the proposition that "this case should [not] be dismissed for failure to allege multiple acts . . . ." (Opp'n 5.) As an initial matter, Plaintiff nowhere in his Complaint defines the "relevant period," instead specifying near the end of his Complaint the only date range as "[t]he period of the conspiracy[,]" which allegedly "has lasted from at least August 2014 forward to the present day." (Compl. ¶ 46.) This leaves the Complaint without sufficient specificity

as to the dates during which the allegedly unlawful telephone calls occurred; do these dates exactly mirror those of the alleged conspiracy? Furthermore, Plaintiff provides no context to or support for the allegations that thousands of telephone calls were daily made, or that they were recorded. At absolute minimum, a fundamental unresolved question is how did Plaintiff acquire this information? Otherwise put, specificity is not satisfied merely by providing exact numbers and using semi-precise language; the pleader must actually show that the statements have support sufficient to establish a plausible violation of law.

Turning to the substance of Plaintiff's RICO claim, Plaintiff has not alleged sufficient factual material to establish a plausible violation by Defendants. A valid RICO claim requires allegations sufficient to establish "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted). Notably, to satisfy element number three "requires at least two predicate acts." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1116 (9th Cir. 2008). In the present case, Plaintiff has only specifically alleged one phone call to his personal phone. (Compl. ¶¶ 4, 10, 14, 15).[2] And Plaintiff's other allegations that could potentially form the basis for a "pattern" are simply not supported by anything other than Plaintiff's bare statements that Defendants took certain illegal actions. This is insufficient to meet the requirement of at least two predicate acts, and therefore Plaintiff's RICO claim fails.[3]

/ / /

/ / /

/ / /

/ / /

---

[2] To be sure, Plaintiff later in his Complaint notes in an aside that "[e]ach of the above stated acts by Defendant ICS (who called Plaintiff multiple times) and co-conspirators Defendants Scholl and Sharpe, constitute racketeering activity . . . ." (*Id.* ¶ 14.) But, as just discussed, this lone parenthetical statement is insufficient to survive a motion to dismiss without surrounding context or support.

[3] Because Plaintiff's RICO claim fails as a matter of law due to insufficient allegations of at least two predicate acts, the Court need not reach Defendants' other RICO-based arguments. However, Plaintiff is advised that this in no way necessarily indicates that Defendants' additional arguments lack merit.

## CONCLUSION

Given the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's RICO cause of action. Plaintiff's RICO claim is **DISMISSED WITHOUT PREJUDICE**. Plaintiff is **GRANTED LEAVE TO AMEND** his Complaint. Any such amendment must be within 21 days from the date on which this Order is electronically docketed.

**IT IS SO ORDERED.**

Dated: February 27, 2017

Hon. Janis L. Sammartino
United States District Judge